IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JAMES W. BLUME, ) | Civil Action No. 3:05-1846-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On April 3, 2001, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held April 16, 2003, at which Plaintiff appeared and testified, the ALJ issued a decision dated February 24, 2005, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was fifty-six years old at the time of the ALJ's decision. He has a sixth-grade education and past relevant work as a fireman and a stage rigger. Plaintiff alleges disability since July 1999, due to back, joint, and lung disorders.

The ALJ found (Tr. 22-23):

      1.     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i)

       of the Social Security Act and is insured for benefits through the date of this decision.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.     The claimant's degenerative disc disease, asthma, hypertension, and diabetes mellitus are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4.     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The claimant retains a residual functional capacity to perform a significant range of light work activity, as described above.

7.     The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

8.     The claimant is an "individual of advanced age" (20 CFR § 404.1563).

9.     The claimant has a "marginal education" (20 CFR § 404.1564).

10.     The claimant has transferable skills as identified by an impartial vocational expert and identified in the body of this decision (20 CFR § 404.1568).

11.     The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

12.     Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.03 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a machine tender and a production inspector.

   13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

On April 22, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on June 25, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." <u>See</u> 20 C.F.R. § 404.1505(a) and <u>Blalock v. Richardson</u>, <u>supra</u>.

## DISCUSSION

Plaintiff worked as a captain for the Charleston, South Carolina Fire Department from 1969 until his retirement in 1999. <u>See</u> Tr. 61, 91, 263. He worked part-time as a stage rigger from 1990 to 1999. Tr. 61.

Plaintiff's impairments, including back and joint pain, diabetes mellitus, and lung disorders were primarily treated by his internist, Dr. Alton B. Currie, Jr. Plaintiff began treatment with Dr. Currie in January 1990. Tr. 62. The transcript contains records of treatment by Dr. Currie, at Associates in Internal Medicine and Low Country Medical Associates, beginning in September 1998. Tr. 135-158, 220-231, 234-239.

Pulmonary function studies on August 21, 1996 revealed an FEV1 of 66 percent. Tr. 94. On September 24, 1997, studies revealed his FEV1 was 65 percent. Tr. 93.

On February 17, 1998, Plaintiff was treated for first degree burns to the fingertips of his third, fourth, and fifth fingertips after he accidentally touched the muffler of his lawnmower. Tr. 115-120. On September 6, 1998, Plaintiff was treated for a second degree burn to his left upper arm which he sustained while barbecuing. Tr. 108-114.

X-rays of Plaintiff's lumbosacral spine, performed on December 18, 1998, revealed spondylosis at the thoracolumbar junction and some compression of T12 with minimal compression of L1 and mild spurring at other levels. See Tr. 157. On October 16, 2001, x-rays of Plaintiff's thoracic and lumbar spine revealed evidence of disc degeneration at the T7-8, T10-11, and T11-12 levels and minor degenerative change in his lumbar spine. Tr. 195.

Plaintiff was treated in the emergency services department for pneumonia on December 30, 1998. Tr. 96-107. Chest x-rays on February 19, 1999, revealed that Plaintiff had left lung pneumonia. Follow-up chest x-rays in March 1999 revealed minimal left infiltrate. On March 26, 1999, x-rays showed clearing of the left infiltrate and Plaintiff was noted to be asymptomatic with no particular cough. Tr. 144-145.

Plaintiff was examined by Dr. Marcus Schaefer on September 13, 2001. Plaintiff reported low back pain, arthritis in his back, and respiratory difficulty. Examination revealed reduced back ranges of motion, but the ability to fully squat; an absence of muscle weakness; normal deep tendon reflexes; and the ability to dismount the examination table and walk fifty feet without apparent difficulty. He had light, questionable expiratory wheezes without rhonchi, rales, or rubs. Plaintiff's blood pressure was elevated at 160/88. Dr. Schaefer diagnosed lumbar spine spondylosis, and a breathing problem of unknown etiology with questionable wheezing. Dr. Schaefer concluded that,

4

due to Plaintiff's back problems, Plaintiff should be restricted to lifting no more than twenty-five pounds and that repetitive stooping and bending should be minimized. Dr. Schaefer also noted that Plaintiff had breathing problems of unknown etiology with some questionable wheezing and breathing problems. He stated that it would appear that absent pulmonary function tests, Plaintiff should be limited from performing rigorous physical activity or prolonged exercise and that sedentary work would not be precluded. Tr. 161-162.

On October 19, 2001, a State agency physician reviewed Plaintiff's records and opined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; push and/or pull within his lifting capacity; balance frequently; climb ramps and stairs occasionally; stoop, kneel, crouch, and crawl occasionally; and perform work not requiring concentrated exposure to fumes, odors, dusts, gases, or poor ventilation. He also opined that Plaintiff could not climb ladders, ropes, or scaffolds and had no manipulative, visual, communicative, or other environmental limitations. Tr. 170-173.

Plaintiff was examined by Dr. Bruce D. Ball, of Allergy and Asthma Consultants, LLP, on November 15, 2001, for complaints of respiratory difficulty. Dr. Ball diagnosed moderate asthma and allergic rhinitis. Tr. 192. On November 30, 2001, Dr. Ball diagnosed Plaintiff with moderate asthma which had improved and noted that it was unclear whether Plaintiff had questionable chronic irreversible airway obstruction. He recommended that Plaintiff be prescribed Advair daily and Albuterol on a per needed basis. Dr. Ball noted that there were some mild degenerative changes in Plaintiff's dorsal spine with minor compression of two or three vertebral bodies. He stated that on Plaintiff's first visit, Plaintiff's lung function test showed FEV1 of 56 percent of predicted and that on November 30, 2001, Plaintiff's FEV1 had improved to 73 percent of predicted showing

5

improvement with two weeks of Advair usage. Dr. Ball suggested that Plaintiff be examined again in three months, but there is no indication of any further treatment by Dr. Ball. Tr. 180-181.

On April 10, 2002, x-rays of Plaintiff's left hip were negative. Tr. 225. Neurodiagnostic testing was performed on April 10, 2002. Findings were consistent with an axionopathy, likely diabetic in origin, with the most profound involvement in the left median nerve. Elbow-to-wrist conduction velocity was mildly slowed at 38 meters per second. Testing of the left ulnar nerve revealed a markedly reduced response with a prolonged latency of 5 msec, a slow elbow-to-wrist conduction velocity of 34 meters per second, and a prolonged F wave of 40 msec. Testing of Plaintiff's left leg revealed that the compound motor action potential was low, thresholds were high, latency was prolonged at 6.6 msec with a slow knee-to-ankle conduction of 38 meters per second, and there was a very prolonged F wave of 72 msec. Tr. 227.

On December 23, 2002, x-rays of Plaintiff's right hand revealed findings of degenerative joint disease in the interphalangeal joint first ray. Tr. 238. At the hearing, Plaintiff testified that he had just had surgery for right thumb tendonitis (he is right-handed) and that his physician told him he might regain some use after six to eight months of therapy. Tr. 260.

On April 2, 2003, in response to a question from Plaintiff's prior attorney as to whether Plaintiff was capable of being gainfully employed due to his diabetes, Dr. Currie responded that he did not feel that Plaintiff could be gainfully employed, not because of his diabetes, but due to chronic back and hip pain, peripheral neuropathy (which was due to Plaintiff's diabetes), and asthma. Tr. 234.

Plaintiff reported that his medications included Soma (as a muscle relaxant), Amaryl (oral medication for diabetes), Lipitor, Darvocet N-100 (for pain), Ibuprofen, (for pain), Advair (for asthma), and Xalatan (for glaucoma).[1] Tr. 90, 92.

Plaintiff alleges that the ALJ erred in (1) making factual findings which were contradicted by the evidence; (2) failing to fully develop the record (including failing to properly evaluate the opinion of Plaintiff's treating physician); (3) incorrectly finding that Plaintiff's impairments did not meet/equal the requirements of the listing of impairments ("Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1 for diabetes;[2] (4) improperly finding that Plaintiff possessed transferable skills; and (5) conducting a flawed pain/credibility analysis. The Commissioner contends that substantial evidence supports the decision that Plaintiff was not disabled within the meaning of the Social Security Act.

A.     Substantial Evidence/Treating Physician

---

[1] Plaintiff also suffers from glaucoma, but this disease is controlled with medication. See Tr. 121-132, 160.

[2] The listing at § 9.08A requires that a claimant have diabetes mellitus with:
Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08A. Section 11.00C requires:
Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerbellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.
20 C.F.R. Pt. 404, Subpt. P § 11.00C.

7

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. In particular, he claims that the ALJ made factual findings which were contradicted by the evidence, failed to fully develop the record, failed to acknowledge Plaintiff's diabetic complications (neuropathy), and failed to properly evaluate the opinion of his treating physician, Dr. Currie. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[3]

This action should be remanded to the ALJ to properly evaluate all of the evidence in this action. In particular, the ALJ failed to properly consider all of the treatment records from Plaintiff's treating physician, Dr. Curry. Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

In discounting Dr. Currie's opinion of disability, the ALJ failed to take into account this treating physician's entire opinion.[4] The ALJ merely states that Dr. Currie "reported that the claimant was unable to be gainfully employed as a result of his chronic back and hip pain." Tr. 16; see also Tr. 20 ("Dr. Currie, the claimant's treating physician, opined that the claimant was unable to be employed due to his chronic back and hip pain..."). This fails to include the rest of Dr. Currie's opinion that Plaintiff is also unable to work because of his neuropathy (due to diabetes) and breathing problems (see Tr. 234- as detailed above). The ALJ discounted Dr. Currie's opinion in large part because Plaintiff did not require any significant medical treatment for his back and hip pain and that upon evaluation Plaintiff was generally able to move about well with little or no limitation in his range of motion. Dr. Currie, however, routinely prescribed anti-inflammatory medications and Darvocet for Plaintiff's condition. Further, as noted by Dr. Currie on March 23,

---

[4]The ALJ noted that Dr. Currie's medical records (some of which are handwritten) were extremely difficult to read due to illegible handwriting. Tr. 16.

9

2001, Plaintiff had difficulty getting off and on the examining table; and on March 31, 2003. Tr. 139. He noted that Plaintiff had limited range of motion of his lumbar spine and hips. Tr. 235.[5]

The ALJ also states that he gave significant weight to Dr. Schaefer's opinion. Dr. Schaeffer opined that Plaintiff should be limited to lifting no more than twenty-five pounds because of his back problem, consistent with the ALJ's conclusion that Plaintiff could perform medium work. Dr. Schaefer, however, also opined that Plaintiff's breathing problem would allow sedentary work. This does not appear to be consistent with the ALJ's conclusion that Plaintiff could perform light work.

  B.  Credibility

Plaintiff alleges that the ALJ conducted a flawed pain and credibility analysis based on a disregard for a large portion of the medical evidence. The Commissioner contends that the ALJ properly consider Plaintiff's credibility because Plaintiff did not take significant pain medications, Plaintiff was able to engage in significant activities of daily living, and there were inconsistencies in the record.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the

---

[5] In light of the ALJ's failure to consider all of the evidence, this action should also be remanded to the ALJ to consider whether Plaintiff met or equaled the Listing at § 9.08A.

10

impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ again does not appear to have considered all of the evidence in making his credibility determination. The ALJ wrote that he discounted Plaintiff's credibility because his allegations were inconsistent with the medical evidence, his reports to his physicians, and the treatment sought and received. Tr. 17. He further stated that "[w]hile the claimant also complained of severe shortness of breath with walking, asbestos-related lung disease, episodes of his back going out with confinement to bed for 3 weeks, the occasional required use of crutches, and chronic hand and feet numbness, the claimant has not apparently made any such severe complaints to his treating physicians." Tr. 18. The medical record, however, reveals (consistent with Plaintiff's complaints of numbness) he received burns on his hands and arms that had to be treated in the emergency room (Tr. 108-120); he complained to Dr. Schaefer of parethesias and numbness in his lower and sometimes upper extremities which had a somewhat glove and stocking distribution (Tr. 161); Dr. Currie noted on March 23, 2001 that Plaintiff complained of his forearms and hands burning and tingling and an inability to feel his feet; Dr. Currie noted peripheral neuropathy on numerous occasions including April 4, July 11, September 16 (Tr. 220, 221, 226); and neurodiagnostic testing showed axionopathy in Plaintiff's left upper and lower extremities (Tr. 227).

Contrary to the ALJ's assertions, Dr. Schaefer noted that Plaintiff had breathing problems with questionable wheezing (Tr. 161-162); Dr. Ball diagnosed Plaintiff with moderate asthma and perhaps chronic irreversible airway obstruction (Tr. 180-181); and Dr. Currie repeatedly documented Plaintiff's complaints of severe shortness of breath and back pain with walking (Tr.

11

137-138, 147-148, 220-221, 226). There is no indication that Plaintiff claimed to have asbestos-related lung disease, but rather that Plaintiff, in response to a questioning, stated that he attended numerous asbestos fires. Tr. 268. The ALJ discounted Plaintiff's credibility in part because there was "no support in the medical record for the claimant's assertion that he sought treatment at the emergency room three times a year." Tr. 18. Plaintiff's testimony, in response to questioning of whether he had to go to the emergency room for asthma, was that he had to go to the emergency room for pleurisy and that he went three times (total), about a year apart. Tr. 290.

The Commissioner also appears to claim that the ALJ discredited Plaintiff's testimony because he took Viagra and it was unbelievable that Plaintiff's spouse, who worked full time, did 90 percent of the housework. These factors, however, do not appear to have been used by the ALJ in discrediting Plaintiff. The Commissioner (referencing Tr. 285-286) contends that Plaintiff testified he walked with pain, but without difficulty with proper shoes. Review of the record, however, reveals that Plaintiff testified that he had neuropathy in both his feet; he could not tell if he had shoes on most of the time; while looking for his shoes the day before the hearing, his children had to tell him "Daddy, they're on your feet"; if he changes shoes, he will trip and fall a lot; he had no surface feeling; if he was barefoot and stepped on something on the floor he would not feel it until it was too late; and he had numbness in his feet for three or more years. Tr. 285-286.

Additionally, Plaintiff had a steady, over thirty-year work history. Where a claimant has worked steadily for a number of years and where "[t]here is no evidence of malingering..." his credibility is enhanced. Lanning v. Heckler, 777 F.2d 1316 (8th Cir. 1985)(dictum); see also Vitek v. Finch, 438 F.2d 1157, 1159 (4th Cir. 1971); Nanny v. Mathews, 423 F. Supp. 548, 551 (E.D.Va. 1976). This action should be remanded for the ALJ to properly consider Plaintiff's credibility in light of all of the evidence.

C.    Transferable Skills

Plaintiff alleges that the ALJ improperly found he had transferable skills. He claims that the VE, without ascertaining exactly what skills Plaintiff actually developed over the years, testified that Plaintiff possessed equipment, supervising, and training skills that were transferable. Plaintiff claims that the simple characterization of his job as "Fire Captain" is insufficient to show that he acquired transferable skills, especially in light of his limited ability to read and write. The Commissioner contends that the ALJ did not err because there was no evidence to support Plaintiff's contention that he was even near illiterate in reading and writing skills.[6] Plaintiff possessed a driver's license and he did not undergo formal testing to establish illiteracy. It was also noted that Plaintiff attained the rank of captain which likely entailed certification to drive fire equipment and significant administrative responsibilities, including (as noted by the VE - Tr. 294) training and evaluation of subordinates.

Here, the ALJ properly obtained testimony from the VE to determine that Plaintiff had transferrable skills. Although Plaintiff testified that he was able to get others to fill out paperwork for him on the job, there is no indication that he was illiterate. The VE took into account that Plaintiff was not doing the full range of skilled work as a fire captain (because Plaintiff was not filling out all his paperwork) in determining that Plaintiff had transferable skills. The VE noted that the Plaintiff was still using equipment, supervising people, and training people on the job. Tr. 293-

---

[6]"Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 416.964(b)(1). On his disability report, Plaintiff checked that he could read English and could write more than his name in English. Tr. 59.   He testified that he could read and write on a somewhat limited basis and that he could add and subtract. Tr. 262.

13

294. There is no indication that Plaintiff objected to this description of his work. Further, in his disability report Plaintiff described his job as the fire captain in charge of a company and acknowledged that he used machines, tools, and equipment; used technical knowledge or skills; wrote reports and completed forms; and spent all of his time supervising four people. Tr. 76.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to fully consider all of the evidence, properly evaluate the opinion of Plaintiff's treating physician (Dr. Currie), properly evaluate Plaintiff's credibility, and evaluate whether Plaintiff met or equaled the Listing at § 9.08A.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

> Respectfully submitted,
>
> s/Joseph R. McCrorey
> United States Magistrate Judge

February 26, 2007
Columbia, South Carolina